**ROACH v. SOLES et al.**

**No. 6936.**

United States District Court,
N. D. California, N. D.

Feb. 8, 1954.

John E. Griffin, Modesto, Cal., for plaintiff.

Edward A. Friend, San Francisco, Cal., for defendant Canadian Indemnity Co.

LEMMON, District Judge.

A complex problem of legal semantics, involving three apparently simple words, confronts the Court in the instant case.

The troublesome terms appear in a liability indemnity insurance policy. They occur in the definition of "premises", which are described as "including

buildings and structures thereon and the *ways immediately adjoining*".

What are "ways"?

How close is "immediately"?

When are ways "adjoining" to premises?

## 1. The Pleadings.

On July 8, 1953, the plaintiff, appearing through his guardian ad litem, filed in the Superior Court of Stanislaus County, California, a complaint containing the following allegations, briefly summarized:

A suit was filed by the plaintiff through his guardian to recover damages for personal injuries received by the former on or about November 23, 1949, which injuries were inflicted by a dog, of which the defendants Soles were the owners and keepers. The injury (sic) occurred on the defendants' premises, known as the Sixth Street Market, at the southeast corner of Sixth and L Streets in Modesto, Stanislaus County.

On November 21, 1952, a judgment for $7,500 and costs was rendered in favor of the plaintiff, after a jury trial in the Superior Court of Stanislaus County.

The defendants Soles had in full force and effect at the time of the injury, a contract of insurance with the defendant indemnity company, hereinafter referred to as the company.

The policy provided that the company would pay, on behalf of the insured, all sums that the latter should become obligated to pay by reason of liability imposed upon them by law, including damages for care or loss of services because of bodily injury, sickness, or disease.

The policy further provided that the company would pay each person who sustains bodily injury, etc., caused by accident and arising out of the use or maintenance of the insured premises or the personal activities of the insured, the reasonable expenses of necessary medical, surgical, etc., services. The insurance contract covered the premises upon which the injury occurred, and specifically provided that "it" (sic) would pay on behalf of the insured all sums that the latter should become obligated to pay by reason of any injury inflicted upon any person by a dog owned by the insured or in "his" (sic) possession at the time of the injury.

A dispute has arisen between the plaintiff and the defendants as to whether the injury suffered by the plaintiff as a result of the dog bite was covered by the policy. It is the contention of the company that the injury is not such an accident as is so covered, while the plaintiff maintains otherwise. It is therefore necessary that a declaratory judgment be rendered to construe the policy, etc. An actual controversy exists.

The plaintiff prays for a declaratory judgment, that the court decree that the plaintiff is entitled to be compensated by the insurance company of the defendants Soles for the expenses and damages awarded to "the plaintiff in that certain action heretofore mentioned", that the company compensate the plaintiff in the sum of $7,500, etc.

On July 27, 1953, the defendant company filed in this court a petition of removal of the cause from the Superior Court of Stanislaus County to this Court on the ground of diversity of citizenship.

The petition alleges that, with the exception of the company, each defendant was joined "merely for the purpose of preventing petitioner from removing this action to a United States District Court; no relief is prayed (for) by the plaintiff against such parties; and the interests of the nominal defendants * * * Soles are shown by the Superior Court complaint to be adverse to those of the petitioner and parallel with those of the plaintiff".

On July 27, 1953, the Company also filed an answer, admitting that it was a corporation authorized to engage in the insurance business in California, and alleging that it exists by virtue of the laws of Canada. The answer denies that the injury in question occurred on the premises of the defendants Soles, admits the allegation regarding the proceed-

ings in the Superior Court of Stanislaus County, and admits that on the date of the injury there was in force a liability policy issued to Mildred Reynold Soles dba Sixth Street Market, at 1130 Sixth Street, Modesto, the coverage under such policy being $5,000 for each person and $10,000 for each accident.

The answer denies, however, that the policy provides for payment of all legal liability of the insured and provides for payment of liability by reason of any injury inflicted upon any person by a dog owned or kept by the insured. It is asserted that liability for the accident in question is specifically excluded by the policy.

The existence of a dispute of the kind described by the complaint is admitted by the Company.

On July 31, 1953, the plaintiff filed an answer to the petition for removal, denying that each defendant other than the company is a formal or nominal party; joined merely for the purpose of preventing the company from removing the action "from" (sic) (to) the United States District Court. The plaintiff asserts that "an actual dispute and controversy exists" between the defendants Soles and the plaintiff, and denies that no relief is prayed for by the plaintiff against the defendants Soles. Accordingly, the plaintiff asks that the company's petition be dismissed, etc.

On September 23, 1953, the plaintiff filed a motion to remand the cause to the Superior Court of Stanislaus County, which motion was denied on October 13, 1953.

The cause was tried to the Court without a jury on November 10, 1953.

2. Pertinent Provisions of the Policy.

"Insuring Agreements

"I Coverage A—Bodily Injury Liability

"To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of such hazards hereinafter defined as are indicated by specific premium in Item 3 of the Declarations.

"* * * * * *

"Definition of Hazards

"* * * * * *

"*Division 1. Premises—Operations.* The ownership, maintenance or use, for the purposes stated in the declarations, of the premises, and all operations during the policy period which are necessary or incidental to such purposes.

"* * * * * *

"Definition of 'Premises'

"The unqualified word 'premises' wherever used in this policy shall mean the premises designated in the declarations, including buildings and structures thereon *and the ways immediately adjoining.*

"* * * * * *

"Exclusions

"This Policy Does Not Apply:

"(a) under division of the Definition of Hazards,

"(1) to dogs, * * * *while away from the premises,* unless specifically declared in the policy and premium shown therefor, * * *"
(Emphasis supplied.)

3. The Applicable Statutes

The California Vehicle Code (1953 Edition)

"*81. Street or Highway.* 'Street' or 'highway' is a way or place of whatever nature, publicly maintained and open to the use of the public for purposes of vehicular travel."

"*83. Roadway.* 'Roadway' is that portion of a highway improved, designed or ordinarily used for vehicular travel."

"*84. Sidewalk.* 'Sidewalk' is that portion of a highway, other

than the roadway, set apart for pedestrian travel."

"*85. Crosswalk.* 'Crosswalk' is either:

"(a) That portion of a roadway ordinarily included within the prolongation or connection of the boundary lines of sidewalks at intersections where the intersecting roadways meet at approximately right angles, except the prolongation of any such lines from an alley across a street.

"(b) Any portion of a roadway distinctly indicated for pedestrian crossing by lines or other markings on the surface."

4. The Facts.

On Sunday, November 23, 1949, the plaintiff, at that time twelve years old; his sister, Marlene Roach; and their friend, Juanita Jackson, were crossing L and Sixth Streets on their way to purchase candy at the Sixth Street Market, situated at the southeast corner of that intersection.

To reach the candy store, the three children crossed over L Street, walking in a southerly direction to the southwest corner of Sixth and L. From there they proceeded to cross Sixth Street, walking in a easterly direction toward the store.

The two girls testified that they walked ahead of the plaintiff. As one of the girls approached a few feet from the east curb of Sixth Street, a dog came either from the front of the store, out the front door, or out to the front of the store from the south side of the premises, which side was enclosed by a fence, in which enclosure the defendants kept the dog.

The dog walked past the two girls in the street and attacked the boy. It is the contention of the plaintiff that the "accident" occurred approximately in the center of Sixth Street, in the middle of the crosswalk at the south boundary of Sixth and L Streets.

The store faces west on Sixth Street. The front doors are of the "accordion" type, capable of making an opening all the way across the front of the market.

5. The Canons of Interpretation Applicable to an Insurance Contract.

The plaintiff insists that "All doubts must be decided in favor of the injured (sic)." If what is meant is that all *reasonable* doubts must be resolved in favor of the *insured,* there can be no quarrel with that general statement.

The limits of this generalization, however, have been aptly stated by the Supreme Court of California. In New York Life Ins. Co. v. Hollender, 1951, 38 Cal.2d 73, 81, 237 P.2d 510, 514, the Court said:

"While it is settled law that in case of doubt the provisions of the insurance contract will be construed most strongly against the insurer (cases cited), the rule is equally well established that where the terms of the policy are plain and explicit, the court will indulge in no forced construction so as to cast a liability upon the insurance company which it has not assumed (cases cited). In the interpretation of any written instrument, the primary object is to ascertain and carry out the intention of the parties." [1]

6. The Meaning of " * * * the Ways Immediately Adjoining."

As we have seen, the policy does not apply, as regards the "Definition of Hazards", "to dogs * * * while away from the premises". And the word "premises" includes "buildings and structures thereon *and the ways immediately adjoining*".

The crucial question here, therefore, is whether the plaintiff was on any of the "ways immediately adjoining" the "buildings and structures" of "the premises designated in the declarations" when he was attacked by the dog belonging to the defendants Soles.

1. See also American Motorists Ins. Co. v. Moses, 1952, 111 Cal.App.2d 344, 347, 348, 244 P.2d 760, petition for a hearing

by the California Supreme Court denied (1952).

At the outset, it might be observed that "Definition of Hazards" in the policy covers "all operations during the policy period which are necessary or incidental to" "the purposes stated in the declarations"; namely, the operation of a "retail grocery". With much cogency, the defendant Company argues that "a dog running loose in the street is not a business risk; a dog running loose in the street, to paraphrase the language of Division 1, Definition of Hazards, is not an operation necessary or incidental to running a retail grocery".

This Court, however, prefers to base its decision upon what it conceives to be even firmer ground.

The key words in this controversy are "the ways immediately adjoining".

The plaintiff quotes the following definition of "way", in Webster's New International Dictionary:

> "That along which one passes to reach some place; a road, street, track or path."

The above definition may be accepted as appropriate here.

Postponing for a moment consideration of the word "immediately", we take up next the term "adjoining". Here we are assisted by definitions found in decisions by the courts of California and of other jurisdictions.

In Barbee v. Southern Pac. Co., 1908, 9 Cal.App. 457, 460, 99 P. 541, 542, the Court said:

> "The word 'along,' as used in the statute, means adjoining, and implies contact."

The Barbee case, supra, was cited with approval by the Supreme Court of California in Brenot v. Southern Pac. R. Co., 1927, 202 Cal. 630, 636, 262 P. 732.

In Carr v. Kingsbury, 1931, 111 Cal. App. 165, 170, 295 P. 586, 588, hearing denied by the Supreme Court of California, 1931, the following language was used:

> "The words 'fronting' and 'adjoining' have been held synonymous. (Case cited.) The phrase referring to lots 'fronting upon a street' means the lots *touching the boundary line of the street*." (Emphasis supplied.)

The Federal courts, too, have almost universally construed "adjoining" as connoting *contact*. In Lewis v. Johnson, C. C.Wash., 1898, 90 F. 673, 674, the Court defined the word as being "to lie or be next to or in contact". And in Utilities Production Corporation v. Carter Oil Co., 10 Cir., 1934, 72 F.2d 655, 660, the Court pointed out that "a lease which does not touch does not adjoin".

State courts other than those of California have construed the word "adjoining" in the same way. In Glenn v. Wagner, 1939, 199 Wash. 160, 90 P.2d 734, 736, the Supreme Court of Washington used the following language:

> "Appellants and respondents are not adjoining proprietors. Their lots do not touch each other. They are not next in contact with each other." [2]

While "adjoining" is sometimes used loosely for "adjacent", the authorities quoted or cited above represent the better view.

We come, finally, to the signification of the word "immediately", especially when used in connection with "adjoining".

In 31 C.J. at Page 250, we find the following:

> "When used to indicate place or space, the term 'immediately' implies that nothing intervenes; it forbids the existence of intervening space."

In 20 Words and Phrases, p. 132, it is said:

> "As used in an employer's liability insurance policy, providing that the insurer should be liable only for injuries sustained on certain premises

2. See also State ex rel. Boynton v. Bunton, Kan., 1935, 40 P.2d 326, 328; 2 Words and Phrases, pp. 393–400, 402–403; 1 C.J. p. 1198–1199; 2 C.J.S., Adjoin, p. 1.

or ways 'immediately' adjoining, the term quoted implied that nothing intervened. The word 'adjoining' ordinarily means joining to, contiguous, adjacent, as an adjacent room. The words 'adjoining' and 'adjacent' are often used synonymously, but not always. 'Adjoining' seems to be a more restricted or confining word than 'adjacent.'" Citing Charles Wolff Packing Co. v. Travelers' Ins. Co., 94 Kan. 630, 146 P. 1175, 1177.

Accordingly, though "adjoining" alone is sometimes loosely used instead of "adjacent", there is no difference of opinion that "immediately adjoining" indicates *definite contact.*

A case involving several facts somewhat resembling those at bar is Long v. London & Lancashire Indemnity Co. of America, 6 Cir., 1941, 119 F.2d 628, 629. There the policy bound the insurer "'to indemnify the assured against loss by reason of the liability imposed upon him by law for damages on account of bodily injuries * * * suffered by any person or persons not employed by the assured as the result of an accident or accidents occurring during the policy period at a location named in the Declarations or upon the sidewalks, ways or premises *immediately adjacent thereto.*'"

The plaintiff and the defendant Company each rely heavily upon the Long case. There a dog came out of a drive on the appellant's premises and crossed over to the intersection of two highways. Then the animal ran alongside a motorcycle officer who was pursuing a speeding automobile, and was struck by the guards of the motorcycle. The impact of the collision turned the machine sideways, and the officer was thrown violently to the pavement.

The officer obtained a judgment against the appellant, who then sued the appellee insurance company for indemnification.

It will be observed that the area covered by the policy in that case was arguably not so restricted as here. There the adjective used was "adjacent" instead of the word of maximum limitation, "adjoining". Webster's International Dictionary, Second Edition, thus expounds the distinction between the two words:

"Objects are Adjacent when they lie close to each other, but not necessarily in actual contact; as, *adjacent* fields, villages. They are Adjoining when they meet at some line or point of junction; as *adjoining* farms, estates *adjoining* the river."

On the other hand, in the Long case, the place where the injury occurred was about sixty feet east of the nearest part of the appellant's property "immediately adjacent" to the "way" on which the accident occurred.

In the Long case, the court held that "The locus quo of the accident was not on a way immediately adjacent to the premises of the assured" and that "There was, therefore, no policy coverage". But because of the difference in the terms of the policy and in the relative situs of the accident with reference to the appellant's property line, that case is inconclusive and of no persuasive force here, either way.

The Company concedes that the Long decision is "the only reported case coming close to this one on its specific facts". The plaintiff goes further and concedes that "There are no cases reported where the accident occurred in the street 'immediately adjoining' the insured's premises". After a laborious independent search, this Court has been unable to discover a decision on all fours with the instant case. The situation, therefore, obviously calls for reasoning by analogy.

The plaintiff contends that "the sidewalk in front of the insured's premises is not a separate and distinct way, independent and apart from the street itself, but that the street is the 'way' within the terms of the policy and that the sidewalk is merely a part of the whole thoroughfare originally dedicated for public use".

If one carries the plaintiff's argument to its logical conclusion, one must say that *the sidewalk across the street from the Soles store* is likewise a "way"

within the terms of the policy, since it, too, "is merely a part of the whole thoroughfare originally dedicated for public use".

Does the plaintiff mean to argue that if the boy had been attacked by the dog while on the *opposite side of the street* from the store, the injury would have been covered by the policy?

The plaintiff's argument can thus be reduced to an absurdity.

7. Conclusion

 The Court is of the opinion that a rational interpretation of the policy in suit excludes from coverage an injury occurring on the crosswalk.

Accordingly, it is ordered that judgment be rendered in favor of the defendant insurance company.